UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KELEE M. SHAW, | ) | CASE NO. 1:12 -CV-01058 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE MCHARGH |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | | |

This case is before the undersigned pursuant to the consent of the parties. (Doc. 11). The issue before the Court is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Kellee M. Shaw's application for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence, and therefore, conclusive.

For the reasons set for the below, the Court AFFIRMS the decision of the Commissioner.

**I.    PROCEDURAL HISTORY**

On March 11, 2009, Plaintiff Kellee M. Shaw ("Plaintiff" or "Shaw") applied for a Period of Disability Insurance benefits. (Tr. 12, 63, 126-29). Shaw alleged that she became disabled on March 11, 2009, due to a tailbone injury (coccyx disorder), myalgia, and myositis (nos) (Tr. 161, 165). Plaintiff's application for Disability Insurance benefits was denied initially and on reconsideration. (Tr. 63, 64, 65-68, 73-75). Plaintiff filed a written request for a hearing before an administrative law judge on November 20, 2009. (Tr. 80). The Commissioner granted Plaintiff's request and scheduled a hearing. (Tr. 93).

1

On December 16, 2010, Administrative Law Judge Julia Terry ("the ALJ") convened a hearing to evaluate Shaw's case. (Tr. 29-62).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id.*).  Gene Berkhammer, a vocational expert ("the VE"), also appeared and testified. (*Id.*).  On January 14, 2011, the ALJ issued her decision in which, after applying the five-step sequential analysis,[1] she concluded Shaw was not disabled. (Tr. 9-23).

Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 7-8).  However, the council denied Plaintiff's request, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial review of the Commissioner's decision.  Review is proper pursuant to 42 U.S.C. § 405(g).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability".  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. PERSONAL BACKGROUND INFORMATION

Shaw was born on February 9, 1964 and was 45 years old on her alleged onset date. (Tr. 63). Accordingly, Plaintiff was at all times considered a "younger individual" for Social Security purposes. *See* 20 C.F.R. § 404.1563(c). In the past, Plaintiff has worked as a fast food manager and as a retail cashier. (Tr. 37-38).

## III. ALJ's RULING

The ALJ made the following findings of fact and conclusions of law in her application of the five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through September 20, 2012.

2. The claimant has not engaged in substantial gainful activity since March 11, 2009, the alleged onset date.

3. The claimant has the following severe impairments: a depressive disorder; a bipolar disorder; a generalized anxiety disorder; diabetes mellitus; lumbar degenerative disc disease; and spondylosis, with a history of a coccyx injury and sacroiliitis.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of light and sedentary work with lifting and carrying no more than 10 pounds. She can stand and/or walk for 6 hours in an 8-hour workday. The claimant can sit for less than 6 hours in an 8-hour workday, but needs to alternate her position at least every 2 hours for 5 minutes and can remain at her workstation during this time. She cannot climb ladders, ropes, and scaffolds, but can occasionally climb ramps and stairs. She can occasionally balance, stop, and kneel, but cannot crouch or crawl. She must avoid concentrated exposure to work hazards, such as unprotected heights and dangerous machinery. The claimant is capable of performing simple, routine work. She can have superficial contact with others, but should not have intense, interpersonal interactions, which are in-depth or confrontational. She can handle occasional changes in routine and should work in an environment that does not require strict, fast-paced production demands.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on February 9, 1964, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 11, 2009, through the date of this decision.

(Tr. 14-22) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

preponderance of the evidence.  See *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  See *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See *Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  See *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.   ANALYSIS

Shaw argues that substantial evidence does not support the ALJ's discounting her credibility regarding her condition and the severity of her symptoms.  Social Security regulations require a two-pronged evaluation of subjective complaints of disabling pain. 20 C.F.R. § 404.1529(c); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994).  First, the ALJ must determine whether there is objective medical evidence of an underlying medical condition that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(c). Second, if the ALJ finds that an underlying impairment exists, he must evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to work. *Id.*  In evaluating the claimant's symptoms, the ALJ should consider the following factors: the claimant's daily activities and functional restrictions; the nature, location, duration, frequency

5

and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. *Id.*; *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3.

Because the ALJ has the opportunity to observe the demeanor and disposition of witnesses during the hearing process, the ALJ is best equipped to evaluate the credibility of witnesses. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247-48 (6th Cir. 2007). It is appropriate for the ALJ to discount credibility where the ALJ finds discrepancies between the medical reports, claimant's testimony, and other evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When an ALJ discredits a claimant's credibility, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *Cunningham v. Astrue*, 360 F. App'x 606, 613 (6th Cir. 2010).

In the present case, the ALJ properly applied the two-part test and at step two concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the record. The ALJ gave several reasons for discrediting Shaw's credibility.

In 2006 Shaw injured her coccyx[2] as a result of a fall out of bed. Plaintiff alleges that the pain from this injury was disabling because she continued to experience serious pain in her tailbone, had to charge a PNS stimulator frequently for extended periods of time in order to treat

---

[2] The "coccyx" is commonly referred to as the tailbone.

6

her pain, and required a special donut pillow while seated.  The ALJ properly discredited Shaw's allegations of tailbone pain because the record shows the implantation of a PNS stimulator in November 2009 was successful as Shaw reported "0" pain and her "symptoms greatly improved" following the implant. (Tr. 529, 536).  Plaintiff claims that her tailbone pain was not resolved, but has not pointed to medical records supporting this claim.  Although Shaw took additional medication for post-operative pain following the PNS implant, she reported using this extra medication for only two to three days following the surgery, not for long-term relief of tailbone pain (Tr. 536), and no treating physician opined that she was disabled from this pain.  In terms of charging her stimulator, the ALJ noted that there is no physician instruction verifying Plaintiff's allegation that she must recharge her stimulator every other day for six to seven hours and remain reclined and inactive during that process.  Shaw was referred to a physician for a sitting cushion in 2007, but the referral was more than one year before the start of her alleged disability, and she provides no evidence that such use was later prescribed. (Tr. 344).  Without proof showing a continued disabling impairment, a prescription describing her stimulator charging procedure, or a prescribed cushion requirement, the ALJ was not required to credit Plaintiff's allegations.

Shaw also alleges that she suffered from constant, disabling lower back pain.  The ALJ appropriately concluded that medical evidence in the record conflicted with Shaw's allegations as to the nature of her pain.  The ALJ acknowledged that in February 2010, following the implant of her PNS stimulator, Shaw began experiencing low back pain reported at a level five out of ten. (Tr. 538).  However, the ALJ pointed to treatment records showing that periodic lumbar epidural injections, nerve blocks, and oral pain medication successfully abated her pain, even if only for short spans of time.  Specifically, the ALJ noted that in April 2010, Shaw's

7

lumbar epidural injection and medial branch block reduced her pain to a level zero. (Tr. 543). Another injection in May 2010 again reduced her pain to zero. (Tr. 549).

The ALJ incorrectly stated that Plaintiff's May 2010 injection provided pain relief until September 2010. Plaintiff told her doctors that relief from the injections lasted only a short time after each injection. (Tr. 556). Even though the ALJ misstated Shaw's period of relief, Shaw points to no other evidence showing that her lower back pain was so serious that she required medical treatment sooner than her next scheduled appointment or that her treating physicians thought restrictions on daily living were necessary. Plaintiff also alleges that the ALJ incorrectly found that she was referred to physical therapy and declined it. As Defendant points out, the record shows that Shaw was referred to formal physical therapy, which she refused, preferring to do physical therapy exercises at home, as noted by the ALJ.[3] (Tr. 538). Further, both Doctor Shivani Chadha and physical therapist Marie Soha prescribed physical therapy, especially in an aquatic environment, to relieve Shaw's low back pain. (Tr. 590, 611). The record does not indicate that Shaw complied with these formal physical therapy recommendations.

In considering Plaintiff's daily activities, the ALJ challenged Plaintiff's testimony that she was unable to perform routine daily living activities. Shaw testified that she could not drive or walk more than a short distance, performed only limited household chores, and no longer bathed herself. (Tr. 44-45, 52-53). As the ALJ noted, Shaw has not shown that any healthcare provider instructed her to limit daily living activities to alleviate her back pain. Shaw provided no evidence to suggest that her limitations were anything other than self-imposed.

---

[3] In her brief, Plaintiff cites to a course of physical therapy treatment supervised by Dr. Carl Robson in 2006. (Tr. 325, 333, 335). This treatment was prior physical therapy that Plaintiff underwent before both her alleged period of disability and her complaints of low back pain. The therapy was prescribed to treat Plaintiff's tailbone pain before the implant of the PNS stimulator, not her later complaints of lower back pain that began in 2010. (Tr. 538).

The ALJ also questioned Shaw's testimony that medication prescribed for her back pain made her drowsy.  The ALJ relied on Plaintiff's medical records, which do not corroborate her claim of drowsiness or that medication prescribed caused any side effect that would inhibit her ability to perform work-related activities.  Nonetheless, the ALJ included a need to avoid concentrated exposure to work hazards in her residual functional capacity determination.

Shaw argues that it was inappropriate for the ALJ to rely on the opinion of State Agency medical consultant, Dr. Elizabeth Das.  Plaintiff provides that Dr. Das's October 21, 2009 opinion is unreliable because it was based on an examination performed one month before Plaintiff's PNS implant and over a year before Plaintiff's hearing.  However, the Court disagrees. It was reasonable for the ALJ to rely on Dr. Das, because although the implant was performed after Dr. Das wrote her opinion, the procedure did not undermine her evaluation that Plaintiff could perform light work.  Shaw admitted that the PNS stimulator relieved, not caused, her tailbone pain. (Tr. 42, 611).  No evidence shows that the stimulator caused complications.  In addition, the ALJ points to a functional capacity evaluation performed by Ms. Soha on November 9, 2010, which occurred only a month before Shaw's hearing and supports Dr. Das's opinion. (Tr. 611).  During the evaluation with Ms. Soha, Shaw classified herself into light physical demand level work, even though she was self-limiting during the examination. (*Id.*). Ms. Soha stated that aquatic physical therapy would likely facilitate pain relief, noting that Shaw believed her capabilities were "much lower" than Ms. Soha observed them to be. (Tr. 614).  The Court recognizes that the ALJ rejected Plaintiff's self-reported sitting, walking, and standing limitations in Ms. Soha's report because these limitations conflicted with Plaintiff's medical record. (Tr. 20).   Even so, the ALJ reasonably credited Plaintiff's light work classification because it was consistent with her treatment history.  Finally, when formulating the residual

9

functional capacity, the ALJ took into account evidence in the record that arose after Dr. Das provided her opinion and as a result, also included Plaintiff's need to periodically alternate sitting and standing every two hours for five minutes.  Therefore, the ALJ's reliance on Dr. Das's opinion was reasonable.

Any factual errors committed by the ALJ in her evaluation of Plaintiff's credibility were *de minimus*.  The ALJ incorrectly stated that Shaw worked full-time as a cashier until March 2009, when in reality, she transitioned into part-time work in 2007.  The ALJ's misstatement on this point is immaterial, because regardless of Plaintiff's level of work activity, the ALJ found that Plaintiff was not engaged in substantial gainful activity at the first step of the sequential analysis.  Second, the ALJ incorrectly found Shaw had not complained of ankle pain to a treating physician.  In March 2008, prior to her alleged onset date, Plaintiff reported ankle pain to her physician after a fall injured her ankle.  Yet, notably Plaintiff has presented no evidence that her ankle pain persisted into the relevant period moreover, for at least twelve months during such period.  Plaintiff bears the burden to show that the condition rendered her disabled during the period under review, not at some prior time.  Therefore, any error on the part of the ALJ regarding his dismissal of this condition is immaterial.  In conclusion, the ALJ reasonably evaluated Shaw's credibility and discounted her allegations of the intensity, persistence, and limiting effects of her symptoms to the extent that they were inconsistent with the record.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date:  September 5, 2013.